IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNDER ARMOUR, INC., | * | |
|---|---|---|
| Plaintiff, | * | |
| | | Civil Action No. RDB-17-3223 |
| v. | * | |
| BATTLE FASHIONS, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Under Armour, Inc. ("Plaintiff" or "UA") brings this declaratory judgment action against Defendants Battle Fashions, Inc.[1] and Kelsey Battle (collectively, "Defendants" or "Battle") seeking a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, that its use of the phrases "I Can Do All Things" and "I Can. I Will." do not infringe on Defendants' "ICAN" trademark. (ECF No. 1.) Currently pending before this Court is Defendants' Motion to Dismiss for Lack of Jurisdiction. (ECF No. 12.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 12) is DENIED.

## **BACKGROUND**

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff Under Armour is a Maryland corporation engaged in the sale of performance products.

---

[1] Defendants assert that Battle Fashions was administratively dissolved in 2010. (ECF No. 12-1.) This Court does not reach the issue of whether Battle Fashions is a proper defendant at this time.

1

(ECF No. 1 at ¶¶ 2, 10.) UA uses the phrases "I Can Do All Things" and "I Can. I Will." in association with and in the promotion of its products. (*Id.* at ¶ 11.) Specifically, UA uses the phrase "I Can Do All Things" in connection with a line of products associated with professional basketball player Stephen Curry, who is known for writing the Bible verse "I can do all things through Christ who strengthens me" on his shoes. (*Id.* at ¶ 12.) UA then uses the phrase "I Can. I Will." in association with its products generally. (*Id.* at ¶ 13.)

Defendant Battle Fashions is a corporation organized and existing under North Carolina law and with its principal place of business in North Carolina. (*Id.* at ¶ 3.) Defendant Kelsey Battle is a North Carolina resident and does business as Battle Fashions and ICAN clothing. (*Id.* at ¶ 4.) On January 10, 2017, Defendants sent UA a cease-and-desist letter asserting that UA was infringing on Battle's rights in the trademark "ICAN." and demanding UA "[c]ease and desist the use of the trademarks 'ICAN,' 'I CAN DO ALL THINGS,' and 'I CAN. I WILL.' and anything confusingly similar thereto." (*Id.* at ¶ 14.) UA responded that it uses "I can" as "part of formative and descriptive phrases," that numerous third parties use the phrase, and confusion was unlikely. (*Id.* at ¶ 15.)

In addition to sending Under Armour the cease-and-desist letter, Defendants wrote to third parties, including Stephen Curry, his agent, and UA's advertising agency Droga5, asserting that UA was infringing on Battle's ICAN trademark. (*Id.* at ¶ 7.) The letters further demanded that the third parties, given their relationships with UA, take action to preserve evidence and cease routine document destruction policies. (*Id.*) UA asserts that "[t]hese third party letters were intended to and had an immediate impact on UA in Maryland." (*Id.*)

On November 1, 2017, almost ten months after unsuccessful negotiations, Under

Armour filed this action for Declaratory Judgment, seeking a declaration that its actions have not violated the Lanham Act, 15 U.S.C. §§ 1114, 1125, or any other state trademark or unfair competition laws, as alleged by the Defendants. (ECF No. 1.) Seven weeks later, on December 20, 2017, Kelsey Battle filed suit as an individual plaintiff against Under Armour in the United States District Court for the Eastern District of North Carolina, asserting trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125 and unfair competition under North Carolina state law. *See Battle v. Under Armour*, Case No. 5:17-cv-00627-BO.[2] On January 29, 2018, Defendants filed the instant Motion to Dismiss. (ECF No. 12.)

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.*; *Sigala v. ABR of VA, Inc.*, 145 F.Supp.3d 486, 489 (D. Md. 2014). While a court may hold an evidentiary hearing or permit discovery for the jurisdictional issue, it may also resolve the issue on the basis of the complaint, motion papers, and other supporting legal memoranda. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Sigala*, 145 F.Supp.3d at 489.

If a court does not hold an evidentiary hearing or permit discovery, a plaintiff need

---

[2] Battle Fashions, Inc. is not listed as a plaintiff in the North Carolina case. Currently pending in that case is Under Armour's Motion to Stay or alternatively Motion to Dismiss, given that Under Armour filed the instant suit first. The United States District Court for the Eastern District of North Carolina has not yet ruled on the motion.

3

only make "a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276. When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Notably, "'a threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005) (emphasis in original) (citation omitted).

## ANALYSIS

### I. Personal Jurisdiction

Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *Sigala*, 145 F.Supp. at 489. To satisfy the first prong, a plaintiff must specifically identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). As Judge Hollander of this Court has recently noted, when interpreting the reach of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b), this Court must adhere to the interpretations of the Maryland Court of Appeals. *Tulkoff Food Prod., Inc. v. Martin*, No. ELH-17-350, 2017 WL 2909250, at *4 (D. Md. July 7, 2017) (citing *Carbone v.*

4

*Deutsche Bank Nat'l Trust Co.*, No. RDB-15-1963, 2016 WL 4158534, at *5 (D. Md. Aug. 5, 2016); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985)).While it is preferable that a plaintiff identify the statute authorizing jurisdiction in its complaint, the plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss. *Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 n.1 (D. Md. 2004). Under Armour asserts that this Court has personal jurisdiction over Defendants because this action arises from Battle's business transactions in Maryland. Md. Code. Ann., Cts. & Jud. Proc. § 6-103.

Although Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396, courts must address both prongs of the personal jurisdiction analysis. *Metro. Reg'l Info. Sys., Inc. v. American Home Realty Network, Inc.*, 888 F.Supp.2d 691, 699 (D. Md. 2012); *CSR, Ltd. V. Taylor*, 411 Md. 457, 475-76 (2009). Under the second prong, courts determine whether the exercise of personal jurisdiction comports with the Fourteenth Amendment's due process requirements. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A "minimum contacts" determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.*

Thus, a court may exercise two types of personal jurisdiction: "'general' (sometimes

called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). General jurisdiction arises from a defendant's continuous and systematic contacts in the forum state. *Id.* On the other hand, specific jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Id.*; *Carefirst*, 334 F.3d at 397. When assessing specific jurisdiction, the United States Court of Appeals for the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers*, 561 F.3d at 278.

The Defendants have acknowledged in their submissions that Battle advertises its products through an internet website. (ECF No. 12-1 at 6-7.) Furthermore, it is acknowledged that this advertising led to three sales in Maryland in 2015. (*Id.*) It is questionable whether such contacts can be said to be continuous and systematic contacts in Maryland to establish general jurisdiction. The real issue before this Court is whether there is specific personal jurisdiction in light of the activities of the Battle Defendants directed at Under Armour in this case.

On January 10, 2017, Defendants sent UA a cease-and-desist letter, giving rise to the case and controversy in this case,[3] asserting that UA was infringing on Battle's rights in the trademark "ICAN." and demanding UA "[c]ease and desist the use of the trademarks

---

[3] In trademark litigation, there is a case or controversy if the party seeking the declaratory judgment has been threatened with an infringement or dilution suit. *TEKsystems, Inc. v. TekSavvy Solutions, Inc.*, No. ELH-16-4215, 2017 WL 4805234 (D. Md. Oct. 25, 2017) (citing 3-11 *Gilson on Trademarks* § 11.04).

6

'ICAN,' 'I CAN DO ALL THINGS,' and 'I CAN. I WILL.' and anything confusingly similar thereto." (*Id.* at ¶ 14.) This Court has previously recognized that cease-and-desist letters alone are insufficient to confer personal jurisdiction over an out of state defendant. *See Mike's Train House, Inc. v. Metro. Transp. Authority*, No. JFM-16-2031, 2016 WL 6652712, at *4 (D. Md. Nov. 9, 2016) (explaining that cease and desist letters *do not alone* allow Maryland courts to exercise personal jurisdiction over a defendant). However, Under Armour asserts in the Subject Complaint that the Battle Defendants engaged in "extra-judicial efforts" to interfere with its business activities in Maryland. It has been recognized that a court may exercise jurisdiction over a defendant when the defendant's actions go "'beyond simply informing the plaintiff that they regarded the plaintiff's products as infringing'" and "'interfere with the plaintiff's business by enlisting a third party to take action against the plaintiff.'" *JHRG LLC v. StormWatch, Inc.*, No. 1:09-cv-919, 2011 WL 3111971 (M.D.N.C. July 26, 2011) (quoting *Campbell v. Pet Co. v. Miale*, 542 F.3d 879, 887 (Fed. Cir. 2008)).

Defendants did not only send a cease-and-desist letter to Under Armour, but also sent letters to Stephen Curry, his agent, and UA's advertising agency Droga5, asserting:

> As you may or may not be aware, we are currently in a dispute with Under Armour over the use of the ICAN mark and the confusingly similar marks "I CAN DO ALL THINGS" and "I CAN. I WILL." in connection with the Steph Curry line of products. We have asked Under Armour to cease and desist from its trademark infringement . . .
>
> Given the likelihood of litigation and [your/your client's] relationship to Under Armour, we request that Steph Curry and his representatives immediately preserve all documents, materials and electronic data, including sent and received email, concerning his contractual relationship with Under Armour, the Steph Curry line of products, the use of the ICAN mark and the confusingly similar marks 'I CAN DO ALL THINGS" and "I CAN. I WILL.," and any marketing, advertising or branding strategy employing those marks.

7

(ECF Nos. 17-2, 17-3, 17-4.)

Defendants argue that these letters were not directed at Maryland because they were sent to California and New York. (ECF No. 17 at 6.) However, Under Armour alleges that "Battle's aim was to interfere with Under Armour's business relationships, which emanate from and are directly affected in Maryland." (ECF No. 16 at 7.) Indeed, Defendant Kelsey Battle did not name Stephen Curry, his agent, or Droga5 as defendants in the North Carolina infringement suit. *See Battle v. Under Armour*, Case No. 5:17-cv-00627-BO. Rather, he filed suit solely against Under Armour. These letters were efforts to notify individuals *not* a target of Defendant Kelsey Battle's suit that Battle was accusing Under Armour of trademark infringement, and "[g]iven the [third parties'] relationship[s] to Under Armour" the third parties needed to preserve a wide range of documents and data. (ECF Nos. 17-2, 17-3, 17-4.) Accordingly, Battle's actions went further than merely informing Under Armour of its assertion of its rights but rather allegedly took steps to interfere with Under Armour's business in Maryland. "Even a single contact may be sufficient to create jurisdiction so long as the 'principle of fair play and substantial justice is not thereby offended.'" *Message Sys., Inc. v. Integrated Broadband Servs., LLC*, No. CCB-09-2122, 2010 WL 2891706, at *4 (D. Md. July 20, 2010) (quoting *Carefirst,* 334 F.3d at 397). The record shows that Plaintiff has made at least a *prima facie* showing that exercising personal jurisdiction over Defendants does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

## II. The Declaratory Judgment Act

Defendants assert that while this Court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, it should exercise its discretion to decline to hear this case.

8

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "It has long been settled that a federal court has a measure of discretion to decline to entertain a declaratory judgment action that is otherwise properly within its jurisdiction." *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F.Supp.2d 330 (D. Md. 2011) (citing *Pub. Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580 (1962)). While the discretion is not absolute, a court may decline to exercise jurisdiction "for 'good reason.'" *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.3d 321, 324 (4th Cir. 1937)). A court should consider four factors when deciding whether to grant declaratory relief: "(1) whether the judgment 'will serve a useful purpose in clarifying the legal relations in issue;' (2) whether the judgment 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding;' (3) considerations of federalism, efficiency, and comity; and (4) 'whether the declaratory judgment action is being used merely as a device for procedural fencing.'" *Hogs & Heroes Found. Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 498 (D. Md. 2016) (quoting *Aetna Cas.*, 139 F.3d at 422-23).

Defendants assert that Under Armour engaged in forum shopping by filing this suit, and Battle's North Carolina action will clarify the legal relations at issue. UA responds that it has not engaged in forum shopping or filed an anticipatory suit, and accordingly this Court should apply the first-to-file rule. In this context, "the first-to-file rule 'gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.'" *Neuralstem, Inc. v. StemCells,*

9

*Inc.*, 573 F.Supp.2d 888, 900 (D. Md. 2008) (quoting *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n. 2 (4th Cir. 1974)). However, this Court has explained that this rule "yields to the interests of justice, and will not be applied when a court finds compelling circumstances supporting its abrogation," *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F.Supp.2d 330 (D. Md. 2011) (citation omitted), including "'bad faith, anticipatory suit, and forum shopping.'" *Neuralstem, Inc. v. StemCells, Inc.*, 573 F.Supp.2d 888, 901 (D. Md. 2008) (quoting *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 622 (9th Cir. 1991)).

Defendants sent UA the cease-and-desist letter in January of 2017. Defendants then claim that "while [good faith] negotiations were ongoing and days before an anticipated settlement discussion," UA filed the instant suit. (ECF No. 12-1.) However, UA did not file this action until November 1, 2017, approximately ten months after receiving Defendants' letter. Defendants then waited seven weeks before filing the North Carolina suit on December 20, 2017. Accordingly, the history of the parties' dispute does not show that UA waited until Battle's suit was "so certain or imminent," that filing suit in this Court was "an improper act of forum shopping." *Mindlab Media*, 838 F.Supp. at 330 (quoting *Learning Network, Inc. v. Discovery Commc'ns, Inc.,* Case No. 01-1202, 11 Fed. App'x. 297, 301 (4th Cir. June 7, 2001)). In the *Learning Network* decision, the Fourth Circuit found no race to the courthouse when the defendant "failed to file the allegedly 'imminent'" action until eight to ten weeks after the plaintiff filed suit. 11 Fed. App'x at 302. In fact, the Battle Defendants in this case never set a deadline with respect to any potential lawsuit against Under Armour. This Court in *Mindlab Media* declined to exercise jurisdiction when the plaintiff intentionally caused the defendants to delay filing suit on their threatened date and then subsequently

10

filed suit the next day. 838 F.Supp.2d. Under the Declaratory Judgment Act, Under Armour has the right to "take action to determine its rights, rather than wait for the adverse party to sue at its convenience" and the record does not show good reason to decline jurisdiction under the statute. *TEKsystems, Inc. v. TekSavvy Sols., Inc.,* No. CV ELH-16-4125, 2017 WL 4805234, at *5 (D. Md. Oct. 25, 2017). Accordingly, Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 12) is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 12) is DENIED.

A separate Order follows.


Dated: March 6, 2018

_____/s/_____
Richard D. Bennett
United States District Judge